**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0377-25

IN THE MATTER OF
COUNTY OF ESSEX,

    Petitioner-Respondent,

and

FOP LODGE 106,

    Respondent-Appellant.

_____

Argued June 3, 2026 – Decided July 7, 2026

Before Judges Rose and DeAlmeida.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2026-1.

Catherine M. Elston argued the cause for appellant (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Joseph M. Hannon argued the cause for respondent County of Essex (Genova Burns, LLC, attorneys; Joseph M. Hannon, of counsel; Scott W. Carbone, on the brief).

Ramiro A. Perez, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli-Carneiro, General Counsel, attorney; Ramiro A. Perez, on the brief).

PER CURIAM

In this public employment matter, FOP Lodge 106 (FOP 106) appeals from an August 28, 2025 final decision of the Public Employment Relations Commission (PERC) restraining arbitration of FOP 106's grievance, which challenged the County of Essex's (County) refusal to reimburse health insurance opt-out payments to FOP 106 union members who received State Health Benefits Plan (SHBP) coverage through a spouse. In a prior related opinion, we affirmed PERC's determination that the County committed unfair labor practices by unilaterally shifting the union members' health care insurance from Aetna, a private carrier, to the SHBP. In re Cnty. of Essex & FOP Lodge 106, No. A-3809-22 (App. Div. May 7, 2024) (slip op. 2-3). We also affirmed PERC's imposition of a reimbursement remedy (remedial order). Id. at 3.

After eleven FOP 106 members were denied opt-out payments, the union filed for arbitration. PERC denied the request holding N.J.A.C. 17:9-1.7(e) and N.J.S.A. 52:14-17.31a bar opt-out payments to members who receive SHBP coverage through a spouse, thus preempting arbitration of the dispute.

2

A-0377-25

On appeal, FOP 106 raises several overlapping arguments. Contending PERC's decision contradicts the remedial order, FOP 106 initially argues N.J.A.C. 17:9-1.7(e) and N.J.S.A. 52:14-17.31a do not apply to remedial opt-out payments – and violates PERC's prior decisions that support arbitrability when the public employee waived coverage following reliance on promised payments. FOP 106 further contends PERC's decision: violates the "make-whole" doctrine, rendered applicable by our prior opinion; "creates an impermissible windfall for an unfair practice violator"; and violates the doctrines of res judicata and collateral estoppel because PERC previously determined the scope of the County's remedy. Unpersuaded, we affirm.

I.

We summarize the pertinent facts and events from the record before PERC. FOP 106 "is the majority union representative of Essex County Department of Corrections' sergeants, lieutenants, and captains." Cnty. of Essex, slip op. at 6. On January 1, 2017, the County unilaterally switched health insurance carriers from Aetna to the SHBP for all employees. Id. at 8. FOP 106, joined by three other unions, filed unfair labor practice charges against the County. Ibid. The hearing examiner found the County committed unfair labor practices and recommended imposition of a reimbursement remedy; PERC

A-0377-25

accepted the hearing examiner's recommendations; the County appealed; and we affirmed. Id. at 2-3.

In our prior opinion, we summarized the losses claimed by the unions in that matter. Relevant here, we stated:

> To support their motion [before PERC], the unions submitted certifications and other information detailing the negative impact on their members from the change in carriers from Aetna to the SHBP. For example, FOP 106 asserted the out-of-pocket costs for its unit employees increased by $6,000, with doctor office co-payments doubling and emergency room co-payments tripling. Other FOP 106 officers experienced losses of coverage for prescription drugs Aetna had covered. . . .
>
> [Id. at 11-12.]

Pertinent to this appeal, we affirmed PERC's remedial order, requiring the County to establish a fund to reimburse all FOP 106 employees "for any costs or losses incurred since January 1, 2017" resulting from the County's unilateral change in health insurance carriers. Id. at 16-17. The remedial order further provided: "Disputes over health insurance benefits reimbursement claims shall be reviewable in binding arbitration."

At issue on this appeal is Article 21(1)(e) of the operative collective negotiations agreement (CNA) between the County and FOP 106. Titled "Waiver/Opt-Out," Article 21(1)(e) provides employees may waive health

insurance benefits and receive opt-out payments set at certain monetary limits based on the type of coverage waived.

In April 2024, FOP 106 submitted $251,000 in reimbursement claims for eleven union members who waived SHBP coverage from 2017 through 2023 because their health benefits were covered under their spouse's plan. The County accepted their waivers, but their opt-out payments were "halted upon enrollment in [the] SHBP."

The County's administrator denied seven of the eleven members' opt-out payments because those members received health benefits through their SHBP-participating spouse. Two members were granted opt-out payments for the years in which they received health benefits through their spouse's non-SHBP plan. The remaining two members were granted opt-out payments for the years in which they received health benefits through their spouse's non-SHBP plan, but denied for the years in which they received benefits through their spouse's SHBP plan.

In October 2024, FOP 106 filed a request for arbitration challenging the County's denial of its members' opt-out payments. In May 2025, the County filed a scope petition seeking to restrain arbitration of FOP 106's opt-out payment grievance. In its petition, the County requested PERC determine

5

whether, under N.J.S.A. 52:14-17.31a, "the payment of a fee to an employee for opting out of the [SHBP] may be subject to arbitration." In opposition, FOP 106 argued the County's petition violated the doctrines of res judicata and collateral estoppel.

On August 28, 2025, PERC issued a final decision granting the County's request to restrain binding arbitration of its opt-out payment denials. Citing N.J.S.A. 34:13A-16, PERC recognized "[t]he scope of negotiations for police officers and firefighters is broader than for other public employees" because the statute permits permissive and mandatory negotiations categories. Quoting our Supreme Court's decision in Paterson Police PBA Local No. 1 v. City of Paterson, 87 N.J. 78 (1981), PERC applied the requisite steps for analyzing a scope petition. Relevant here, the first step of the analysis requires a determination as to "whether the particular item in dispute is controlled by a specific statute or regulation. If it is, the parties may not include an inconsistent term in their [CNA]." Id. at 92. Recognizing N.J.A.C. 17:9-1.7(e) "explicitly preempt[ed]" the ability to provide a monetary incentive for "waiving coverage because of other SHBP . . . coverage," PERC held the opt-out payment dispute was "not legally arbitrable."

PERC next addressed FOP 106's contention "N.J.A.C. 17:9-1.7(e) only became applicable" to the parties' dispute as a direct result of "the County's unfair practice and . . . should not preempt a remedy that includes opt-out payments." PERC noted, had the County "continued providing a non-SHBP health insurance plan with opt-out payments for waiving coverage, then N.J.A.C. 17:9-1.7(e) would not bar opt-out payments to employees with other SHBP coverage." Here, however, PERC determined under N.J.S.A. 52:14-17.31a(c), which governs waiver of benefits under the SHBP, "the decision o[n] whether to provide for any opt-out payments 'shall not be subject to the collective bargaining process.'" PERC therefore found FOP 106 "[wa]s statutorily preempted from enforcing Article 21 of the CNA in binding arbitration." Noting its prior related decision in In re County of Essex & PBA Local 382, S.N. No. 2017-33, 46 N.J.P.E.R. ¶ 88, 2020 NJ PERC LEXIS 20 (2020),[1] PERC concluded, in the present matter, "whether or not the County had switched to the SHBP, the health insurance waiver program was within its non-negotiable discretion to implement." Accordingly, PERC granted the County's request to restrain binding arbitration. This appeal followed.

---

[1] In its present decision, PERC mistakenly noted a different agency decision that is not pertinent to this appeal.

A-0377-25

## II.

Well-settled principles guide our circumscribed standard of review. "In the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by PERC." City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567 (1998). "[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985). Accordingly, we will not disturb an agency determination unless it was arbitrary, capricious, or unreasonable, its findings lacked support in the evidence, or it violated the legislative grant of authority governing the agency. In re Herrmann, 192 N.J. 19, 27-28 (2007).

That deferential standard is particularly germane here in view of PERC's "primary jurisdiction to make a determination on the merits of the question of whether the subject matter of a particular dispute is within the scope of collective negotiations." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 154 (1978) (citing N.J.S.A. 34:13A-5.4(d)); see also In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 329 (1989)

(recognizing appellate courts must uphold PERC's final scope-of-negotiations decision unless it is arbitrary or capricious); In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 16-17 (2020) (stating "[i]n the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by PERC" (alteration in original) (quoting City of Jersey City 154 N.J. at 567)).

As PERC recognized in its present decision, generally, "an otherwise negotiable topic cannot be the subject of a negotiated agreement if it is preempted by legislation." Bethlehem Twp. Bd. of Educ. v. Bethlehem Twp. Educ. Ass'n, 91 N.J. 38, 44 (1982). "When legislation or a regulation 'establishes a specific term or condition of employment that leaves no room for discretionary action, then negotiation on that term is fully preempted.'" Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 336-37 (2015) (quoting In re Loc. 195, IFPTE, 88 N.J. 393, 403 (1982)). A statute or regulation does not preempt negotiations over an employment condition unless it fixes the condition "expressly, specifically and comprehensively." Bethlehem Twp. Bd. of Educ., 91 N.J. at 44 (quoting Council of N.J. State Coll. Locs. v. State Bd. of Higher Educ., 91 N.J. 18, 30 (1982)). Thus, for preemption to apply, there must be no room for debate as to the employer's discretion on the subject. Ibid.

A-0377-25

Under the SHBP Act, N.J.S.A. 52:14-17.25 to -17.46a, the SHBP offers health insurance to qualified State and local employees, retirees, and eligible dependents. When an employer elects to participate in the SHBP, it becomes "subject to and in accordance with the rules and regulations of the [SHBP]." N.J.S.A. 52:14-17.37(a).

Under N.J.S.A. 52:14-17.31a(a), an employer participating in the SHBP "may allow any employee who is eligible for other health care coverage to waive coverage under the [SHBP]." However, "[t]he decision of an employer to allow its employees to waive coverage and the amount of consideration to be paid therefor shall not be subject to the collective bargaining process." N.J.S.A. 52:14-17.31a(c).

Pursuant to N.J.A.C. 17:9-1.7, titled, "Employer incentives for non-enrollment," an employer may pay an employee "an incentive to waive coverage if that employee is eligible for other health coverage." N.J.A.C. 17:9-1.7(b). Relevant here, "[i]f the member is waiving coverage because of other SHBP . . . coverage, no monetary incentive is allowed." N.J.A.C. 17:9-1.7(e).

With these principles in view, we turn to FOP 106's first contention. FOP 106 asserts its members' loss of opt-out payments falls squarely within the meaning of the remedial order's mandate that the County reimburse FOP 106

members "for any costs or losses incurred" in view of PERC's unfair labor practice finding and, as such, PERC's present decision contradicts the remedial order. Countering PERC's reliance on N.J.A.C. 17:9-1.7(e) and N.J.S.A. 52:14-17.31a, FOP 106 claims the regulation and statute are not applicable to payments made pursuant to the remedial order.

Citing PERC's prior decisions in two unrelated matters, FOP 106 reprises its contention N.J.S.A. 52:14-17.31a only preempts negotiations on the County's decision to offer opt-out payments, not "enforce an existing waiver system" where members have "waived coverage in reliance on a promised payment." See In re City of Orange Twp., P.E.R.C. No. 2019-37, 45 N.J.P.E.R. ¶ 86, 2019 NJ PERC LEXIS 25 (2019); In re Borough of Sayreville, P.E.R.C. No. 2020-34, 46 NJPER ¶ 76, 2020 NJ PERC LEXIS 9 (2020). Because its members previously were eligible to receive opt-out payments under the parties' CNA before the County unlawfully switched health insurance carriers, FOP 106 maintains the dispute is arbitrable similar to the employees in City of Orange and Borough of Sayreville.

In our prior opinion, we affirmed PERC's remedy for the County's unfair labor practice in view of the costs and losses considered by the agency in reaching its decision in that case. Cnty. of Essex, slip op. at 26-36. Those costs

11

and losses included FOP 106 members' increased "out-of-pocket costs"; doubling of "doctor office co-payments"; tripling of "emergency room co-payments"; and "losses of coverage for prescription drugs." Id. at 12. As PERC argues in its responding brief, these costs and losses "flowed from a decrease in the level of health benefits resulting from the County's unilateral change to the SHBP." Conversely, the opt-out payments at issue on this appeal "do not flow from a decrease in the level of health benefits." (Emphasis added). Notably, the termination of opt-out payments where a member's spouse was enrolled in the SHBP was not at issue in our prior appeal.

Further, although agency decisions are not binding on this court, we are persuaded by PERC's holding in County of Essex & PBA Local 382, 2020 NJ PERC LEXIS 20, at *31. In that related matter, PERC granted the County's request to restrain arbitration on PBA Local 382's (PBA 382) application to arbitrate the union's opt-out claims under the "Waiver/Opt-Out" provision of its contract with the County, which echoes the provision at issue here. Id. at *12. Crediting the County's argument that its "decision to provide PBA [382] members with opt-out payments for waiving employer-provided health coverage [wa]s statutorily preempted" under N.J.S.A. 52:14-17.31a "and therefore not arbitrable," id. at *11, PERC restrained arbitration "to the extent that the

grievance challenge[d] the County's elimination of opt-out stipends for waiving employer-provided health care coverage," id. at *31. But PERC denied the County's request "to the extent the grievance challenge[d] any other alleged reductions in the level of the PBA's health benefits."[2] Ibid.

Having considered FOP 106's reprised contentions in view of PERC's decision in the present matter and County of Essex & PBA Local 382, we conclude, as did the agency, arbitration of FOP 106's grievance on its opt-out payments claims was preempted by N.J.S.A. 52:14-17.31a and expressly barred under N.J.A.C. 17:9-1.7(e). The plain language of N.J.A.C. 17:9-1.7(e) bars an employer from providing monetary incentives when its members waive coverage because of other SHBP coverage. N.J.A.C. 17:9-1.7(e) is express, specific, and comprehensive in its prohibition. See Bethlehem Twp. Bd. of Educ., 91 N.J. at 44. When a regulation clearly establishes a term of employment that leaves no room for discretionary action, the term must be preempted from arbitration. See Borough of Keyport, 222 N.J. at 336-37. The terms of the remedial order are consonant with our conclusion. As PERC asserts

---

[2] The County appealed from PERC's decision and we affirmed. In re Cnty. of Essex & PBA Loc. 382, No. A-3458-19 (App. Div. Apr. 20, 2021) (slip op. at 2). PBA 382 did not cross-appeal from PERC's decision restraining arbitration on its opt-out claims. We granted FOP 106 and the other affected bargaining units leave to intervene as of right under Rule 4:33-1. Id. at 4 n.2.

in its responding brief, "[t]he [remedial] order did not preclude [the agency] from exercising its scope of negotiations jurisdiction" on the dispute at issue.

Pursuant to our limited standard of review, City of Jersey City, 154 N.J. at 567, we discern no basis to disturb PERC's scope decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), and was not arbitrary, unreasonable, or capricious, Herrmann, 192 N.J. at 27-28. To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hartley

Clerk of the Appellate Division

A-0377-25